As I received your order of December 4 and tried to respond to it, I furnished an appellant statement to the court for oral argument, which runs about 10 pages. I hope you have a copy. I faxed that in yesterday. And as I understand it, the court is pointing out that the test that will apply will be whether or not there's evidence proofs in the abuse of discretion. I think the real problem, counsel, is that we're concerned that we don't have jurisdiction in this case. At all? No, after Forney v. Apfel. The Supreme Court there said that when there's a remand from the district court, that the party may take an appeal at that point, even if there's a remand. And the question, as I understand it, is whether that means that there's a final judgment and the party must take an appeal. Your client didn't take an appeal from the district court's opinion. It went back on remand, which means that you may have lost your opportunity to appeal this case and we may not have jurisdiction. There may not be anything we can do about it. The Supreme Court was reversing us and we may not be happy with what they did, but that is what the Supreme Court said. Well, I didn't understand Forney that way. Well, Forney says that when the district court remands a case back to the commissioner for further proceedings, that that's a final judgment and it's an appealable judgment because embodied within that many times is the petitioner may make multiple arguments and the district court may say, well, on one of them, it's got to go back. But for all intents and purposes, the district court's judgment remanding the case back to the commissioner is appealable to us. It's final. So here it went back to the commissioner, back to the appeals counsel, sent it back to the ALJ, ALJ does something entirely different than what he should have done and doesn't do what the appeals counsel tells him to do, as I recall, on one of the issues. Back to the district court and you try to litigate the original issues that the district court had decided the first time around and I think Judge Bivey hits it on the head, looks like you're barred from that, looks like all you can bring to our attention, bring to us is what happened on the second go around. You can argue over Dr. Jabbat versus Dr. Schatz, but you can't dispute that she was found not disabled. That was decided by the district court the first time and you didn't take an appeal from that. You went back on the remand, which was the Schatz-Jabbat RFC question, that is how many hours a day could she work? And you may be able to prevail, if you prevail on that point, then she may get the relief that she wants, but it's a different judgment from the question of whether or not she's disabled, which looks like has been decided and not appealed. Well, would this argument make any difference? If plaintiff argues that the first decision by the ALJ, that's Judge Urban, is based on legal error, has no support in substantial evidence, that the district court in remanding that case and finding a single error for grounds for remand, which was that the ALJ improperly relied on the opinion of a non-examining medical expert, Dr. Jabbat, instead of relying on the opinion of Dr. Schatz, an examining internist who found that the plaintiff was limited to sedentary work. The district court completely overlooked the multiple errors, but my argument all along has been that the first ALJ decision, Judge Urban, is totally, you know, it's error-ridden from the beginning to the end, it's not supported by substantial evidence. Now, with the second decision, when Judge Reason got the case, she adopted all of those errors from the first one, and the appeals counsel, when it stepped in, it adopted substantially all of the errors. So if this court were to, on whatever grounds, Forney or some other grounds, say we have no jurisdiction to review this case, what about manifest injustice from the standpoint that, you know, justice is not being served by the fact that the first ALJ's decision should be null and void. The district court overlooked it, the appeals counsel overlooked it. Well, you didn't appeal it. I'm sorry? But you didn't appeal it. When the district court found against you the first time, you didn't appeal it. You went back to the appeals counsel, and in fact you acquiesced on the question of disability and went back to the appeals counsel and the ALJ on the question that was remanded by the district court. It was a limited remand, and that is to resolve the question of Dr. Schatz versus Dr. Jabbat. She still might be able to, depending on how that question comes out, she could still possibly prevail. It's just a limited, you're just stuck with one last issue. Judge Bivey, when you say that I didn't appeal it, you know, it doesn't register in me because every time I get an unfavorable decision, I take the appeal within the 60-day period. I'm missing something, I don't know what it is. Well, the district court found, it affirmed the ALJ, it found that there was substantial evidence to support the ALJ's decision that your client was not disabled. You did not appeal that ruling. The ALJ found that with respect to one portion of the ALJ's decision, that is the question about the resolution of whether Dr. Schatz, an examining physician, should have been privileged over Dr. Jabbat, who was a non-examining physician, that that question had to go back to the ALJ and to the appeals council and back to the agency. When you failed to take the appeal, you've now lost, if we're reading Forney correctly, and this was not a decision that this court favored, as I said, the Supreme Court was reversing us, but the Supreme Court said, that is a final decision and you may take an appeal from that decision. It appears that not only was it your privilege to take some, but that you must have taken it or lost it. In which case, all we have now is the question of the remand. I was totally unaware of that point, totally unaware of it. That's why we submitted it. It was not raised by the government, but that's why, it's a jurisdictional question, which is why we asked the parties to be prepared to discuss it today. Well, I did what research I could in a limited time, and I submitted this statement, but I'm surprised, and I'm not familiar with that particular issue. I've never run into it, and it's caught me unprepared, really. Well, I'm sure we'll hear from the government on this, and Judge Pius' discretion, he may wish to request additional supplemental briefing if there's something else to be said. Perhaps you'd like to go on to the question of Dr. Jabbat versus Dr. Schatz. Let me just mention, there were two applications. This lady was found disabled on one and not on the other. In my opinion, she should have been found disabled on both. Does that change anything? Does that have any relevance? I think you're limited to arguing the question that was sent back down on the remand. She's got her benefits. This is all just about back benefits. Well, do you want me to proceed with anything? Maybe we should hear from the government. Let's hear from the government. The argument I'm going to make is what I've outlined here, that Judge Urban's decision is totally invalid, unsupported, contrary to ... It's so error-ridden that ... That's well laid out in your brief. Can you tell us just briefly why you think the Appeals Council was wrong in deciding that there was substantial evidence to support the ALJ's initial decision that supported Dr. Jabbat? Yes. Totally wrong. Totally wrong. Can you tell us why? Okay. If we look at Judge Urban's decision, can I go through that and point out the errors one after the other? As long as you're referring to Dr. Schatz and Dr. Jabbat. Dr. Jabbat is ... Dr. Fabella. Okay. Dr. Jabbat is non-examining. He's at the bottom as far as getting any weight. He was the least informed medical expert in the case. There were four examining state agency doctors who examined this claimant. If we look at those four reports, taking ... The judge starts with Dr. Kang Nugent, the psychiatrist. He found no mental impairment. Well, of course, one visit doesn't review medical records, and there's a language interpretation problem as well. The 8th Circus is better known for the rule where the one-time examiner does not look at the medical records or perform an in-detail evaluation. That report is not substantial evidence. I cited one case where the 9th Circuit adopted that rule and applied it. If I go on to the second psychiatric, that was Dr. Nikopoulos. I have pointed out four specific errors in that case. I think that the remand was limited to the question of her ability to work. Dr. Schatz said that she could work for four to six hours a day. Dr. Jabbat said she could work at least six hours. The appeals council seemed to think that Dr. Fabella's, who was an examining doctor, that his opinion supported Dr. Jabbat. What can you tell us about Dr. Fabella's opinion? Dr. Fabella did not review the medical records. He was not aware of the fact that this lady had carpal tunnel surgery. And so he said she can do fine manipulation. Every other doctor in the report who reviewed the records and knew of the surgery opposes that conclusion. Who was Dr. Fabella anyway? Fabella? One-time consultative examiner. Did not see any medical records. Did not know that this claimant had carpal tunnel surgery history. So you know, she's in and out. This claimant testified that these four doctors spent between five and 10 minutes in their exam. And that's not the first time I've heard that kind of testimony from claimants. If he doesn't know the history of the medical condition, doesn't know she had surgery, how can he give an accurate opinion? He can't. And he didn't. But the most, the best informed doctor is Dr. Terzakarian who treated this lady 30 different occasions over a two-plus year period. And the Judge Urban, the first ALJ says, I don't know that he's even a treating doctor. I give no weight to him, you know. And Dr. Schatz? Dr. Schatz took an x-ray. He examined this lady. So he came up with a more complete evaluation, more accurate evaluation. The limitation that's important and that was more or less buried, the limitation Dr. Schatz gave was the lifting and the hour thing was important. It limited her to sedentary work. The first judge and the second ALJ, I'm talking about the ALJs, overlooked that limitation. The Appeals Council pointed it out and said it limited her to sedentary work. That was an examining doctor. Now as I understand it, under the vocational expert's opinion, she was limited to sedentary work with all her other restrictions. She couldn't work. But the hypotheticals that were given to the vocational expert understated the severity of both her physical and mental disorders. I'm not... Right. Let me ask you this. Sure. If you take, if you credit Dr. Schatz, what happens? Well she's limited to less than, well sedentary work or less. Right. Didn't the V.E. say that she would then qualify for disability benefits? We're looking, we've been talking only about the physical for the most part so far. If you bring in the mental, the anxiety, depression, etc. What if you don't? Well, it should be brought in. It should be based on... I understand that you'd like it brought in. What if we don't bring in the mental? What if we just limit it to the physical? Okay, I don't know. What happens if we credit Dr. Schatz? That was Judge Piazza's question. Does she win? I think you'd have to concede she's limited to sedentary, not medium. And if she's limited to sedentary work, could she have worked? I'm sorry? I was under the impression as Dr. Judge Piazza, a good European system, that she still might prevail at that point. With all the limitations on her fine motor skills and so on, that if she's limited to sedentary work, that she might not be able to work. She couldn't do sedentary because she worked for, I don't know, five years doing a lock stitch on an operating electrical machine. That's what brought on the carpal tunnel. And she had surgery for it. All of that is objective evidence. Maybe we should hear from the government. I'll ask that government that same question. I'm sorry I'm not. That's okay. I understand. I understand. All right, thank you. Good morning, Your Honors. Michael Capitale on behalf of the Appellee Commissioner of Social Security. One of the many problems with the claimant's argument is that it constitutes an attempt to appeal the district court's November 2000 remand order. The claimant failed to appeal that remand order, and the government pointed that out in its brief, pages 14 to 15. So you had said in the claimant's argument that the government didn't point that out. It was pointed out. The claimant did not appeal. The government did not cite Forney v. Appell, but I'm prepared to discuss it today. Under Forney v. Appell, the claimant would have had the right to appeal the November 2000 order. However, she chose not to. Is it clear that she must have appealed it? The Supreme Court's decision says that she may appeal because it's a final order. Does that also mean that she must appeal or lose the appeal? If she doesn't appeal, then she loses the appeal under Forney. The claimant has a choice. As with any other claimant who responds to a district court remand order, the claimant can either appeal to the appellate court, which the claimant didn't do here, or the claimant could go back to the agency and follow through with the remand order. That's exactly what the Solicitor General advised the Supreme Court in Forney. The claimant here did exactly what the Solicitor General predicted what most claimants would do. Upon obtaining a remand, she apparently elected to return to the agency rather than to appeal directly to the Ninth Circuit to obtain an outright reversal. The claimant lost her chance to appeal. She didn't have to appeal, but she chose not to. As I understand it, she had to appeal to keep those issues alive. What we're stuck with here is the law of the case doctrine, law of the mandate. The district court sent back to the commissioner one issue that was still alive, correct? Correct. Still alive and still bubbling. It goes back to the council, goes to the ALJ, and the ALJ decides the case on a whole other ground other than what the district court allowed, correct? Correct. Goes back to the council and the council says, oh, you can't do that. And on the issue that the district court sent back, she loses. Correct. Right? Okay, so those two issues are... So that one issue is still alive? Yes, Your Honor. The doctor, which we were just discussing with the council? Yes. Other issues could have been alive, too, had the claimant presented new evidence. The law of the case doctrine says that... Under the mandate, under the district court's order, at that new hearing, would she have been allowed to sort of reopen everything again? She would have been allowed to present new evidence. It's a de novo hearing. Once the court remands a case and the appeals council remands a case to the administrative law judge, it's generally a de novo hearing where a claimant can present new evidence. Even though the district court... So in this case, she mounted several challenges to the ALJ's first decision, right? Yes. She said, you didn't properly credit my treating doctor. Yes. So the district court judge rejected that argument. Yes. Right? But she found problems with another issue. Yes. Sent it back, ultimately gets back to the ALJ. Are you telling me that when it got back there, she could have brought that doctor back in and had that doctor testify and showed or brought more evidence? She could have done that. The district court ordered that the ALJ explain why she was accepting the opinion of a non-examining physician over an examining physician. And in order to do that, an ALJ may choose to take on new evidence. Perhaps the record may not have been sufficient to make that determination. But you're suggesting then that in the dispute over whether we credit Dr. Jabbat or whether we credit Dr. Schatz, that the ALJ was free to assume, to introduce new evidence related to that question. The question of disability had already been decided by the district court and not appealed. Are you suggesting that new evidence could have been introduced on the question of disability? The question of disability had not been decided by the court. All the court had done is rejected her argument, her challenges to the ALJ's decision, like not giving adequate weight to the treating physician. Yes. Correct. And said, send this back. You've got to have further proceedings to decide whether or not she's truly disabled. Exactly. Right? And in order to make that finding, she had to explain why she accredited a non-examining physician over an examining physician. More of this is my own edification, but I'm curious about your response to Judge Bybee just then and the early response you gave to me. I understand what you're telling me is that when it got back to the ALJ, it was a whole new hearing. Yes, it's a de novo hearing. Entirely brand new. Subject to the law of the case doctrine. Aha. Now you want to say it's subject to law. And the law of the case was, if she didn't produce any new evidence, then she was stuck with a discredited treating physician. Yes. The law of the case, the district court order established the law of the case. Without any kind of new evidence, the ALJ was bound by the law of the case. The ALJ could, or the claimant could have presented new evidence. The claimant could have shown up for the hearing. She chose not to. The claimant could have given new medical evidence, such as a follow-up report by Dr. Schatz, such as something else by another doctor that would have given reason to give more weight to Dr. Schatz's opinion. But nothing was offered. Not even testimony. Okay, so let me ask you this. Okay, so with respect to the psychological, her mental issue, mental impairment issue, there was no new evidence presented on that at that second hearing. Is that right? No, there was no new evidence. And the second ALJ just went back in and re-evaluated that evidence. The ALJ did that, yes. Which was inconsistent with the law of the case. Yes. Right. She should have just gone in. Without new evidence, she should have just gone back and looked at the doctors, Dr. Schatz and Dr. Yes, she should have done that. And given a more complete explanation why she rejected the treating physician, the examining doctor's opinion versus the non-examining. Yes. And, in fact, that ALJ, in her decision, which is not the final decision of the commissioner in this case, she noted that the claimant did not offer more evidence regarding her mental impairment. Therefore, she ruled the same way that the district court held. Okay, so when it gets to us, okay, now this whole record and counsel is now trying to say, well, the first district court decision is all wrong. Really, what this is all about is the law of the case, correct? This is about the law of the case. And the law of the case, there are circumstances when you can disregard law of the case, when there's manifest error. Yes, and I'm not arguing that an ALJ or a claimant is bound without limitation to a district court remand order. There are certain circumstances that would allow the parties to deviate from that, such as a change in circumstances, clear error, intervening change of law, substantially new evidence. And none of that happened here. The claimant didn't even appear. The claimant produced no new evidence. And, therefore, the ALJ, the appeals counsel, properly ruled consistently with the law of the case, which is the district court's record. Okay, so then the appeals counsel, though, with respect to the one issue that was still alive, the Dr. Schatz versus Dr. who was the other one? Jabot. Jabot. Dr. Jabot. And Dr. Fabella.  On her ability to work. The appeals counsel ruled correctly on that. Okay, so what, you know, explain to me why they got it right with respect to my understanding is, you know, if you have a good treating physician, they're the best. Next is an examining doctor. And then the next? Next is a guy who looks over the records, gives an opinion. That's correct. There is a hierarchy. And then, you know, sometimes you have a chiropractor who was just treated as a lay witness. Right, a chiropractor is considered another source. There is a hierarchy of medical source opinions. Here we have an examining physician versus a non-examining. The examining one gives, imposes greater limitations. Yes. And why was it proper to give more weight to the non-examining in this particular case? Well, here we had a non-examining physician, which was Dr. Jabot, an examining physician, Dr. Schatz, and then another examining physician, Dr. Fabella. The appeals counsel explained that it accepted Dr. Jabot's opinion because it was consistent with the examining physician opinion of Dr. Fabella. Both of them assessed physical impairments. The statement of Dr. Fabella's that the appeals counsel cites, I have to say, doesn't do very much for me. It's a very, very general conclusion that she is able to move about, handle objects, and perform basic activities of daily living. Unless that's technical language, how does that support Dr. Jabot's conclusion over Dr. Schatz's conclusion? And why isn't it just as easily consistent with Dr. Schatz's conclusion? Well, Dr. Schatz, the differences in their opinion is that Dr. Schatz concluded that the claimant could stand or walk for a combination, she could stand or walk for four to six hours per day. And Dr. Jabot found that she could walk, stand or walk for six hours in a day. The appeals counsel didn't just cite that quote. The appeals counsel also cited Dr. Fabella's observation that the claimant had good mobility and normal spine motion. She had a normal gait and she did not require an assistive device to ambulate. And those were material to whether the claimant could stand or walk. It wasn't just the fact that she could move about, handle objects, and perform basic activities of daily living. So there was a consistency between Dr. Fabella's opinion and Dr. Jabot's opinion, sufficient enough that the appeals counsel could properly accept Dr. Jabot's opinion over Dr. Schatz's opinion. And the claimant mentions that Dr. Fabella's opinion cannot constitute substantial evidence. That's contrary to non-circuit law. As long as he based his opinion on independent clinical findings, that constitutes substantial evidence. He didn't need to review the records. He also had knowledge of the claimant's wrist surgery. He noted that there were some surgical wrist scars on her hands. And finally, I wanted to note that Dr. Schatz did not limit the claimant to sedentary work. He said that the claimant could stand or walk for four to six hours. And that part can be construed as consistent with Dr. Fabella's opinion or Dr. Jabot's opinion, who determined that she would be able to stand or walk for six hours. There is a consistency there. It's within the province of the ALJ to resolve conflicts in the evidence. The appeals counsel did here and found that Dr. Jabot's opinion was more consistent with Dr. Fabella's opinion, which was based on independent clinical findings. So the district court properly held that the appeals counsel resolved sole deficiency in its 2000 remand order. And if we're limiting it, if we're limiting review to the 2006 order of the district court, the district court's orders affirming the commissioner's final decision should be upheld. Okay. Anything else? Okay. Thank you. Appreciate your argument. I'd like to comment about Dr. Fabella's report. Unlike Dr. Schatz, he did not take an X-ray. Dr. Schatz is the only consultative examiner that took the X-ray. And he made a cursory examination. And where are the clinical, independent clinical findings? There aren't any. The government's argument is based on any report by a one-time consultative examiner employed by the government in completely, you know, there's clinical findings. The court asked counsel for the government, where are the, you know, he reports a claimant can walk and so on. That is not clinical evidence. And if you look at the report carefully, there are no clinical, independent clinical findings. A treating doctor sees this lady 30 times over a span of two years. And if you read his reports, there's more detail. There are independent clinical findings there. But in Dr. Fabella's report, there are no independent clinical findings. Dr. Schatz took more trouble, more time, and more energy to examine this lady. And he wrote the more accurate report. Invariably, the ALJs who decided the case and government counsel have consistently said that, you know, these reports are replete with independent clinical findings. They are not. Let me go back to discuss the law of the case doctrine, manifest injustice, or equitable considerations, or anything else that might, that this court might be able to apply at this point in time in overcoming what appears to me a totally unjust decision by the first administrative law judge, by the second administrative law judge, by the appeals counsel, and by the district court. I think this is apparent. And, you know, I ask the court to find some way of issuing a decision that would be fair and just for this claimant. The fact that she's receiving disability benefits and has for many years proves that she's disabled. Her condition has been understated every turn by the one-time government examiners and those examiners that never saw this claimant and said, well, I can look at this paper and tell you that, you know, she's not disabled, she can do medium work, et cetera. The one new evidence that I submitted to the appeals counsel is a report by Dr. Wendell, a psychologist, who did a thorough one-time exam, and psychological exams are objective medical evidence. And everyone who looked at it, the appeals counsel, the second ALJ, said, you know, it's not persuasive, there's nothing there. Constantly you see no objective evidence to support. But when they read a one-time exam by the government doctor, they immediately find a lot of objective evidence that does not exist. Let me ask you one last question. I didn't bring the full administrative record with me out here. I'm sorry? I did not bring the full administrative record on the bench. Yes, sir. But I have his report, and just in skimming his report, I don't see in the report where he says that he took x-rays. I'm almost certain of it, and I think you'll find it in the briefs I've submitted. I do mention the x-rays. I remember that quite clearly, Your Honor. So there are x-rays that he considered when he gave his report. There are x-rays in the record that back up his report. There's nothing contrary to those x-rays? No, no, no. I'm just asking you, because I read his report, and I don't see where he says he considered x-rays. But you're telling me here that there were x-rays taken at his direction? Yes. That is my best recollection, Your Honor. I remember that clearly. I could be wrong, but I seriously doubt it. And it's supported by the long-time treating doctor who backs that up as well. Thank you. I appreciate your time. Thank you very much. The matter will be submitted. And we will end this session for the day and for the week. Thank you all very much.
judges: Nelson, Paez, Bybee